## UNITED STATES BANKRUPTCY COURT FOR THE
## SOUTHERN DISTRICT OF ILLINOIS
## EFFINGHAM DIVISION

|  |  |
|---|---|
| In re: | ) Case No. 19-60349    21-417-JPG |
|  | ) Chapter 7 |
| BOYCE ALLEN BURNS and | ) |
| AMANDA LANE BURNS, | ) |
|  | ) |
| Debtors. | ) |
|  | ) |
| ——————————————— | ) |
|  | ) |
| NANCY J. GARGULA, | ) |
| UNITED STATES TRUSTEE, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Adv. Case No.: 20-06018 |
|  | ) |
| DEIGHAN LAW LLC | ) |
| f/k/a LAW SOLUTIONS CHICAGO LLC, | ) |
| d/b/a UPRIGHT LAW LLC, | ) |
|  | ) |
| and | ) |
|  | ) |
| JAMES E, FORD, | ) |
|  | ) |
| Defendants. | ) |
| ——————————————— | ) |

### MOTION TO WITHDRAW THE REFERENCE

Defendants Deighan Law LLC d/b/a UpRight Law LLC ("UpRight Law" or the "Firm") and James E. Ford ("Mr. Ford") (collectively, "Defendants"), pursuant to 28 U.S.C. § 157(d) and Rule 5011 of the Federal Rules of Bankruptcy Procedure, respectfully move the District Court to enter an order withdrawing the reference of this adversary proceeding to the U.S. Bankruptcy Court for the Southern District of Illinois (the "Bankruptcy Court"). In support of this motion, the Defendants submit the attached memorandum of law.

WHEREFORE, Defendants respectfully request that this Court grant an order withdrawing the reference in this adversary proceeding that is effective immediately. Alternatively, if the Court denies this motion, Defendants ask the Court to certify the Seventh Amendment right to a jury trial

issue and the Fifth Amendment due process issue for interlocutory appeal to the United States Court of Appeals for the Seventh Circuit.

Date: April 12, 2021

Respectfully submitted,

/s/ *Mark T. Lavery*
Mark T. Lavery
Attorney at Law
15774 S. LaGrange
Orland Park, IL 60462
(t) (708) 274-6803
(e) laverylawyer@gmail

*Counsel for Defendants, Deighan*
*Law LLC, and James E. Homa*

Charles A. Armgardt
Of Counsel
DEIGHAN LAW LLC
79 W. Monroe St., Suite 1006
Chicago, IL 60603
(t) 877-927-5451
(e) carmgardt@uprightlaw.com

*Counsel for Defendants, Deighan*
*Law LLC and James E. Homa*

## CERTIFICATE OF SERVICE

I, Mark T. Lavery, hereby certify that on April 12, 2021, I filed a copy of the foregoing *Motion to Withdraw the Reference* through the Court's CM/ECF filing system, which will effectuate service upon all counsel of record.

/s/*Mark T. Lavery*
Mark Lavery

## MEMORANDUM IN SUPPORT OF MOTION TO WITHDRAW[1]

### I.   Overview of Arguments

Cause exists for the granting of the Motion for at least three reasons. First, Defendants possess a Seventh Amendment right to a jury trial on the claims asserted by the United States Trustee in her *Complaint* (Doc. 1) (the "Complaint") pursuant to 11 U.S.C. § 526[2] (Counts I, and II).  To the extent that a Bankruptcy Court is permitted to conduct a jury trial with unanimous express consent from the parties, Defendants do ***not*** provide such consent.  For this reason alone, withdrawal of the reference is required in this case.

Second, withdrawal of the reference is mandatory because adjudication of this case requires consideration of constitutional issues — including but not limited to the Due Process clause of the Fifth Amendment.  In an adversary proceeding, defendants have a due process right to a neutral arbiter.  Yet, this proceeding is the product of the Bankruptcy Court's *sua sponte* initiation of dozens of investigations of UpRight Law, and its directive to the UST to conduct those investigations.  In the course of this investigatory process, the Bankruptcy Court, *inter alia,* (i) usurped the administrative functions performed by the Chapter 7 Trustee in the underlying bankruptcy case, and (ii) prejudged the merits of this case based on inferences it drew without conducting an evidentiary hearing.  Given this background, Defendants respectfully submit that the Bankruptcy Court cannot serve as a neutral arbiter.  It would be unfair, and inconsistent with the appearance of judicial neutrality, for the Bankruptcy Court to preside over an adversary proceeding that is the product of an investigation the Bankruptcy Court directed the UST to undertake.

Third, cause also exists to withdraw the reference because the factors that support permissive withdrawal are present.  Among other considerations, the UST's claims are not "core,"

---

[1] Capitalized terms not defined in this memorandum have the same meanings as ascribed to them in Defendants' *Motion to Withdraw the Reference* (the "Motion"), to which this memorandum is attached.
[2] Hereafter, citations to a section of title 11 (the "Bankruptcy Code") will be "Section __" or "§ __."

as they have nothing to do with the administration of the bankruptcy estate, which has already been fully administered.  Because these claims are not core, the Bankruptcy Court cannot enter a final judgment, and any recommendation that the Bankruptcy Court might make would need to be reviewed *de novo* by this Court.  To avoid that duplication of effort, considerations of judicial efficiency (among other factors) warrant withdrawal of the reference in this case.

## II.    Procedural Posture of this Adversary Proceeding

Distilled to its essence, the instant proceeding is an attempt to transform Defendants' successful representation of the debtors, Boyce and Amanda Burns (the "Debtors"), into a broad condemnation of UpRight Law that purports to seek, *inter alia*, civil penalties based on a variety of purported false statements and misrepresentations that are not alleged to have harmed a substantial right of the Debtors or their bankruptcy estate.[3]

The Debtors engaged UpRight Law to represent them in a Chapter 7 bankruptcy for a flat attorney fee of $1,250.[4]  UpRight Law did, in fact, provide such representation to the Debtors.[5] The Firm filed their Chapter 7 Bankruptcy Petition in September 2019.[6]  They received a discharge in April 2020.[7]  The UST makes no allegation that the Debtor expressed any concern (let alone lodged a complaint) to anyone regarding Defendants' representation of them.

Nevertheless, nine months after the Debtors received their discharge and after the Chapter 7 Trustee issued his *Report of No Distribution* (Doc. 40 in 19-60349) on March 30, 2020, the UST filed her four-count Complaint against Defendants on December 31, 2020. Two of the counts alleged violations of § 526, and purported to seek, *inter alia*, civil penalties against Defendants

---

[3] Rule 61 of the Federal Rules of Civil Procedure, made applicable to this case under Federal Rule of Bankruptcy Procedure 9005, provides that "[a]t every stage of the proceeding, the court *must* disregard all errors and defects that do not affect any party's substantial rights."  Fed. R. Civ. P. 61 (emphasis added).  Hereafter, references to a Federal Rule of Bankruptcy Procedure will be "Rule __."
[4] *See*  Complaint, Doc.1, at ¶ 104;
[5] *See* Complaint, Doc.1, *passim*.
[6] *See Chapter 7 Voluntary Petition*, Doc. 1 in *In re Burns*, Bankr. Case No. 19-60349-lkg (Bankr. S.D. Ill.) (the "Burns Bankruptcy").  Hereafter, citations to docket entries and filings in the Debtors' Bankruptcy will be "Doc. __ in 19-60349."
[7] *See Order of Discharge*, Doc. 41 in 19-60349.

totaling $55,000.00.[8]  The third Count purported to seek disgorgement of the attorney fee paid to UpRight Law pursuant to § 329 and Rule 2017, even though the Chapter 7 Trustee and the UST never objected to any fee paid to Upright Law during the Debtors' Bankruptcy.[9]

Defendants moved to dismiss the Original Complaint on January 29, 2021.[10]  On March 15, 2021, the Bankruptcy Court denied that motion in its entirety without issuing any written opinion.[11]

On March 29, 2021, Defendants filed their *Answer and Additional Defenses* (Doc. 12) (the "Answer") to the Complaint.  Among other aspects of their Answer, Defendants denied the UST's allegation that the UST's action constitutes a core proceeding.[12]  They also made a jury demand.[13] Defendants subsequently filed the instant Motion.

**III.    The Bankruptcy Court's Investigation in the Debtor's Bankruptcy**

During a period of more than two years that preceded the filing of the Complaint, the Bankruptcy Court *sua sponte* orchestrated a sweeping investigation of UpRight Law by issuing "notices" of hearings ("Notices") "to consider and act upon the . . . Disclosure of Compensation of Attorney" filed by the debtor's counsel in dozens of Chapter 7 cases filed by UpRight Law on behalf of its clients.[14] The Notices did not identify any Bankruptcy Code provision or Bankruptcy Rule that is alleged to have been violated by the Disclosures of Compensation of Attorney for Debtor(s) (the "Disclosures"), nor did they indicate what relief, if any, might be imposed on UpRight Law or its attorneys based on the Disclosures.  Moreover, the Notices did not allege that the amounts disclosed in the Disclosures were incorrect.

---

[8] *See* Complaint, Doc. 1, at ¶ 136(D), 139(D).
[9] *Id.* at ¶ 175(D).
[10] *See Defendants' Motion to Dismiss the Adversary Complaint* (Doc. 5).
[11] *See Minutes of Court re. Defendants' Motion to Dismiss* (Doc. 11), at 1.
[12] *See* Answer, Doc.12, at ¶ 3.
[13] *Id.* at 1.
[14] *See, e.g.*, Doc. 26 in 19-60349.

Currently, the Bankruptcy Court has issued Notices in **53** cases filed by UpRight Law on behalf of its clients.[15] In **45** of those cases, the Notices were issued within seven days after the bankruptcy petitions were filed.[16] In **three** cases, the Notices were issued *after* a discharge order had been entered.[17] Importantly, none of the Notices identified any wrongdoing on the part of UpRight Law or its attorney. Despite the fact that, to date, *Reports of No Distribution* (the "Final Reports") have been filed, and discharges have been entered, in **43** of these cases,[18] as the Bankruptcy Court refuses to perform the ministerial act of closing them as required by § 350, and Rule 5009. Thus, the cases remain open to the detriment of the innocent debtors. The Bankruptcy Court continues to issue, in apparent reflexive fashion, new Notices in cases filed by UpRight Law, often shortly after they are filed.

In July 2020, UpRight Law and dozens of its clients, including the Debtors, filed *Motions to Close Case*,[19] all of which the Bankruptcy Court denied.[20] Soon thereafter, on September 30 and October 1, 2020, UpRight Law and its clients filed motions to withdraw the reference (the "Initial Motions to Withdraw") and notices of appeal of the orders in which the Bankruptcy Court denied the Motions to Close.[21]

On October 30, 2020, the Bankruptcy Court issued identical *Opinions*[22] (collectively, the "Opinion") that reflected its rationale for denying the Motions to Close. In that Opinion, the Bankruptcy Court acknowledged that each of the subject cases was capable of being closed because the Chapter 7 Trustee had issued the Final Report without objection and a discharge had

---

[15] *See* Table attached as Exhibit A, which identifies the cases in which the Bankruptcy Court has issued notices.

[16] *See* Ex. A (9 notices issued within 1 day of filing; 13 notices issued within 2 days of filing; 10 notices issued within 3 days of filing; 4 notices issued within 4 days of filing; 3 notices issued within 5 days of filing; and 5 notices issued within 7 days of filing).

[17] *See* Exhibit A (104 days, 48 days, and 41 days after the discharge order was issued).

[18] *See* Exhibit A (in 36 of the cases, discharge orders were issued over 100 days ago).

[19] *See, e.g.,* Docs. 57 and 58 in 19-60349.

[20] *See, e.g., Minutes of Court*, Doc. 77 in 19-60349.

[21] *See, e.g.,* Docs. 82 and 84 in 19-60349. The Initial Motions to Withdraw and Notices of Appeal appeals have since been consolidated under lead case numbers 20-1176 and 20-1006, respectively.

[22] *See, e.g.,* Doc. 94 in 20-30186, attached hereto as "Exhibit B."

been entered.[23]   The Bankruptcy Court also acknowledged that generally, when such events occur, bankruptcy courts close those cases.[24]   The Bankruptcy Court nevertheless stated that it was not required to close these cases because the UST was still in the process of conducting court-ordered investigations through Rule 2004 Examinations in each of the subject matters.   Rather than following the unambiguous mandates of § 350 and Rule 5009,[25] the Bankruptcy Court indicated that "[t]he cases should remain open at least until the 2004 Examinations have taken place and the U.S. Trustee has had an opportunity to evaluate the testimony and file additional [adversary complaints], if necessary."[26]

Of note, in the Opinion, the Bankruptcy Court purported to issue "Findings of Fact." These "Findings of Fact" appear to represent the Bankruptcy Court's views on the merits of these bankruptcy cases, despite the fact that there were no contested matters before it, and no evidentiary hearings were conducted in any of these bankruptcy cases.   Now the UST has been using this Order in an attempt to foreclose Defendants from asserting defenses. (ECF No. 43 at p. 17)

Certain aspects of the Opinion are particularly notable.   For instance, during multiple pre-Opinion proceedings related to its investigations, the Bankruptcy Court indicated that those investigations are not genuinely about the attorney fees charged in the subject cases.[27]   But later, in an attempt to justify its refusal to close the bankruptcy cases so that its investigations could

---

[23] *See Opinion*, Ex. B, at 37.
[24] *Id.* at 39.
[25] Section 350(a) provides: "After an estate is fully administered and the court has discharged the trustee, the court *shall* close the case." 11 U.S.C. § 350 (emphasis added).   "[Rule 5009] is the same as § 350(a) of the Code." Fed. R. Bankr. P. 5009, 1983 Advisory Comm. Note.
[26] *See* Opinion, Ex. B, at 39.
[27] During a January 28, 2020 hearing, the Bankruptcy Court stated, "*this has always been more than just an issue of the amount charged* . . . ." *See* Transcript of Jan. 28, 2020 Hrg., attached hereto as "Exhibit C," at 7:6-7 (emphasis added).   Then, during the course of hearings on April 28 and 29, 2020, which resulted in the Bankruptcy Court authorizing over **50** Rule 2004 Examinations of the Firm and its clients, the Bankruptcy Court stated "And this is where, you know, Upright always wants to hone the case down into the amount of the fees, the amount of the fees, the amount of the fees. *That's not it. That's not where I'm having my problem.*" See Transcript of Apr. 28, 2020 Hrg., attached as "Exhibit D," at 23:9-12 (emphasis added).

proceed, the Bankruptcy Court characterized the fees charged in these cases, which consisted of flat fees that ranged from $1,050 to $1,775, as "egregious."[28]

## IV.    Legal Standard

Pursuant to § 157(a), "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." *Id*.  Thus, district courts may refer any or all proceedings arising under title 11 to the bankruptcy judges of their district, which the Southern District has done.  *See Stern v. Marshall*, 564 U.S. 462, 473 (2011) (*citing* 28 U.S.C. § 157(a); S.D. Ill. Local Rule Br 1001.1.  A district court also "may withdraw, in whole or in part, any case or proceeding referred to the bankruptcy court under [§ 157], on its own motion or on timely motion of any party, for cause shown." *See Stern*, 564 U.S. at 473; 28 U.S.C. §157(d).

The phrase "for cause shown" is not defined in § 157.  *In re K & R Express Syst., Inc.*, 382 B.R. 443, 446 (N.D. Ill. 2007).  In the Seventh Circuit, withdrawal of the reference is required when a litigant has a right to a jury trial, and does not consent to a jury trial in the bankruptcy court.  *See Matter of Grabill Corp.*, 967 F.2d 1152, 1158 (7th Cir. 1992) (reversing denial of motion to withdraw the reference when party had a right to a jury trial); *Davidson v. Bristol-Myers Squibb Co.,* No. 10-CV-970-MJR, 2011 WL 13234404, at *2 (S.D. Ill. Sept. 30, 2011) (referral to bankruptcy court withdrawn where defendants had right to jury trial and "made clear that they [did] not consent to trial before the bankruptcy court").  District courts are also mandated to withdraw the reference upon timely motion "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d); *see, e.g., Picard v. Avellino*, 469 B.R. 408, 414 (S.D.N.Y. 2012) (consideration of constitutional issues mandated withdrawal of reference).

---

[28] *See* Opinion, Ex. B, at 41.

District courts may also permissively withdraw the reference based on factors that include, *inter alia*, promoting the uniformity and efficiency of bankruptcy administration, judicial economy, and conservation of resources. *In re K & R Express Syst., Inc.,* 382 B.R. at 446. Further, permissive withdrawal may be especially appropriate for non-core proceedings, *see, e.g., In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993); *In re K & R Express Syst., Inc.,* 382 B.R. at 446) ("[T]he most important factor is whether a proceeding is core or non-core, as efficiency, uniformity and judicial economy concerns are largely subsumed within it . . . ."), "or in any other case containing sensitivities such that a determination by an Article III judge is required to insure the appearance and the reality of independence and impartiality in the decision," *In re Texaco Inc.*, 84 B.R. 911, 925 (S.D.N.Y. 1988) (quoting *Pacemaker Diag. Clinic of Am. v. Instromedix, Inc.*, 725 F.2d 537 (9th Cir. 1984).

## V.     Argument

### A. This Court must withdraw the reference because Defendants are entitled to a jury trial on the UST's § 526 claims, which must be conducted in an Article III court.

#### 1.   Defendants have a constitutional right to a jury trial on the UST's § 526 claims.

The Seventh Amendment to the U.S. Constitution provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." Thus, written into this nation's basic charter is the notion that trial by jury is:

> the normal *and preferable mode* of disposing of issues of fact *in civil cases at law* as well as in criminal cases. Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that *any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.*

*Dimick v. Schiedt*, 293 U.S. 474, 485, 55 S. Ct. 296, 301 (1935) (emphases added), quoted with approval in *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 501, 79 S. Ct. 948, 952 (1959). Thus, any effort to limit a litigant's jury trial rights must be carefully examined before it will be allowed.

The basic decisional unit in determining the existence of a right to jury trial is not the case but the particular issue within a case on which a trial by jury is demanded. *Ross v. Bernhard*, 396

U.S. 531, 538 (1970) ("The Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action.")   The Supreme Court interprets "suits at common law" to mean cases involving legal rights, as distinguished from equitable claims. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989).   In determining whether a party has legal claim, and thus a jury trial right, in the context of a statutory claim, the Supreme Court has articulated the following test:

> In determining whether a claim in a case presents an equitable or legal issue, [f]irst, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity.  Second, we examine the remedy sought and determine whether it is legal or equitable in nature.  The second stage of this analysis is more important than the first.  If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder.

*Id*. (citations omitted).  The jury trial right thus turns on a two-part "compare actions" and "remedy sought" test.  If these factors indicate that a party is entitled to a jury trial, it is also necessary to decide whether Congress may assign *and has assigned* resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as a factfinder.  As illustrated below, application of the *Granfinanciera* test confirms that Defendants are entitled to a jury trial on the UST's § 526 claims.

## 2. The UST's claims for civil penalties under § 526 entitled Defendants to a jury trial.

Claims brought by the Federal Government that purport to seek civil penalties have long been held to be analogous to actions in debt that fell within jurisdiction of the English courts of law.  *See, e.g., Tull v. United States*, 481 U.S. 412, 418 (1987) (compiling cases).  Accordingly, where the Government seeks to recover civil penalties under a statutory provision, it historically has been viewed as an action in debt requiring trial by jury.  *Id*. at 418-19

For example, in *Tull*, a case in which the Federal Government sought civil penalties against the Petitioner for statutory violations of the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.*, the

8

Supreme Court held that the Petitioner was entitled to a jury trial. *Id*. at 425. In so holding, the Supreme Court considered — and rejected — the Government's argument that its claims brought under the Clean Water Act were more analogous to an action to abate a nuisance than one to collect a debt. *See id*. at 420. The Court also rejected the notion that it needed to rest its conclusion on an "abstruse historical" search for the nearest 18th century analogy. *Id*. at 421 (citing *Ross v. Bernhard*, 396 U.S. 531, 538 n. 10 (1970)). Rather, the Court emphasized that "characterizing the relief sought is 'more important' than finding a precisely analogous common-law cause of action in determining whether the Seventh Amendment guarantees a jury trial." *Id*. (citing *Curtis v. Loether*, 415 U.S. 189, 196 (1974)).

Applied to the instant context, the reasoning of *Tull* confirms that Defendants are entitled to a jury trial. As in *Tull*, the Federal Government in this case purports to seek a civil penalty pursuant to a federal statute, *i.e.*, § 526(c)(5). Moreover, the instant case presents an even more compelling case for application of the Seventh Amendment than *Tull* did, given that the UST's §526 claims are also analogous to traditional common law claims for dishonesty, fraud, misrepresentation or professional negligence.[29] These types of claims constituted actions in law as to which a right to jury trial also attached. *Wright & Miller, Federal Prac. & Proc*., § 2311, (*citing, e.g.*, *Curriden v. Middleton*, 232 U.S. 633 (1914), and *Dellefield v. Blockdel Realty Co*., 1 F.R.D. 689 (S.D.N.Y. 1941) (where plaintiff sought both money damages and rescission for fraudulent misrepresentation, issues relating to money damages concerned conversion and would be tried to a jury, with court then passing on equitable relief sought)); *Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 568 (1990) (malpractice action for monetary relief against attorney

---

[29] Specifically, the UST seeks relief for violations of: (i) § 526(a)(1), which prohibits a debt relief agency from "fail[ing] to perform any service that such agency informed an assisted person . . . it would provide in connection with a case or proceeding under this title" and (iii) § 526(a)(3), which prohibits debt relief agencies from "misrepresent[ing] to any assisted person . . . directly or indirectly, affirmatively or by material omission, with respect to . . . (A) the services that such agency will provide to such person[,] or (B) the benefits and risks that may result if such person becomes a debtor in a case under this title[.]" *See* Complaint, Doc. 1, Counts I and II.

historically an action at law); *see also Granfinanciera,* 492 U.S. at 41 (fraudulent conveyance under § 548 an action at law).

### 3. The civil penalty sought by the UST is legal in nature.

As noted above, the second prong of the *Granfinanciera* test — the nature of the remedy sought — is more important than the first. *See Tull*, 481 U.S. at 422. Because the UST purports to seek a remedy that is legal in nature — a civil penalty — Defendants are plainly entitled to a jury trial under the Seventh Amendment.

The UST cannot circumvent Defendants' Seventh Amendment right to a jury trial by arguing that, in addition to a civil penalty, she purports to seek an (ill-conceived) injunction. *See Tull*, 481 U.S. at 424-25. A litigant is not deprived of a jury trial merely because the Government also purports to seek an injunction. *Id.*; *Wright & Miller, Federal Prac. & Proc.*, §§ 2313, 2308. It is well-settled "that suits for money damages, including punitive damages, are legal in nature entailing the right to a jury trial, and that this right cannot be abridged even if the damages are considered incidental to the equitable claims." *Curtis v. Loether*, 415 U.S. 189, 196 n. 11 (1974) (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, (1959); and *Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962)); *see also Tull,* 481 U.S. at 424-25 (Government could have sought injunctive relief independent of, or in addition to, a civil penalty, and thus, the legal relief was not incidental to, or intertwined, with the equitable relief such that a jury trial would be denied). Defendants are plainly entitled to a jury trial on the UST's § 526 claims.

### 4. Congress has not assigned (and cannot assign) resolution of § 526 claims to a non-Article III adjudicative body that does not use a jury as factfinder.

To the extent that the UST may argue that Defendants are not entitled to a jury right on the theory that Congress has *assigned* § 526 claims for adjudication to the Bankruptcy Court, such a contention is untrue. Such an argument, which presumably would be based on the limited "public rights" exception, simply does not apply in this case.

#### a. The "public rights" exception does not insulate §526 claims from the right to a jury trial.

"'Separation-of-powers principles are intended, in part, to protect each branch of government from incursion by the others.'" *Stern*, 564 U.S. at 483 (quoting *Bond v. United States*, 564 U.S. 211, 222 (2011)). These principles date back to this nation's founding.

> In establishing the system of divided power in the Constitution, the Framers considered it essential that "the judiciary remain[ ] truly distinct from both the legislature and the executive." The Federalist No. 78, p. 466 (C. Rossiter ed. 1961) (A. Hamilton). As Hamilton put it, quoting Montesquieu, "'there is no liberty if the power of judging be not separated from the legislative and executive powers.'" *Ibid*. (quoting 1 Montesquieu, Spirit of Laws 181).

*Id.*

With this said, in certain limited circumstances, "when Congress creates new statutory 'public rights' it may assign their adjudication to an administration agency with which a jury trial would be incompatible, without violating the Seventh Amendment's injunction that jury trial is to be 'preserved' in 'suits at common law.'" *Granfinanciera*, 492 U.S. at 51 (quotation omitted). Yet, to state the terms of that limited exception is to confirm its inapplicability here.

To begin with, when Congress created § 526, it did ***not*** assign the adjudication of claims for relief under that section to an administrative agency. Rather, such claims, *like all claims for relief under title 11*, are adjudicated before federal district courts and federal bankruptcy courts (subject to certain limitations). Moreover, different parties can bring enforcement actions pursuant § 526, including but not limited to debtors and State Attorneys General. Thus, it cannot be said that adjudication of § 526 claims were even assigned to a particular tribunal, or a particular enforcer, let alone that adjudication of such claims were specifically assigned to an administrative agency. The "public rights" exception simply has no application in this case. *Cf. Stern*, 564 U.S. at 494 ( "public rights" exception did not apply in context of resolving common law counterclaims brought in bankruptcy case, as resolution of such claims had not been specifically assigned to an administrative agency for that task, and "experts" for resolving such claims were Article III courts).

To the extent that the UST may purport to rely on 28 U.S.C. § 157(a) as a basis for invoking of the public rights doctrine, such an argument similarly would fail. That statute provides that "[e]ach district court *may* provide that any or all cases under title 11 and any or all proceedings

arising under Title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for that district." 28 U.S.C. § 157(a) (emphasis added). *Nothing* in that statute contemplates the assignment of cases arising under title 11 to an administration agency for adjudication. Nor is the assignment of such cases to a bankruptcy court mandated by the statute. *Rather*, 28 U.S.C. § 157(a) merely *authorizes* district courts to *refer* cases to Bankruptcy Courts, which this Court has done.[30] Indeed, if that statute truly constituted an "assignment" of all cases arising under title 11, it would suffer from the same defects that had caused the Supreme Court to render portions of the 1978 Bankruptcy Reform Act (the "1978 Act") unconstitutional. *See Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982).[31]

Additionally, one of the prerequisites for application of the "public rights" doctrine is that the tribunal charged with adjudicating the claim in question must be "incompatible" with a jury, *i.e.,* they must not use juries as factfinders. *See Granfinanciera*, 492 U.S. at 41. But district court and bankruptcy courts *do* use juries as factfinders. The "public rights" doctrine simply has no application here.

### b. The Supreme Court has repeatedly warned against an expansive application of the "public rights" exception.

The instant case plainly does not fall within the narrow "public rights" exception, and there is no reason for this Court to strain to find that it does. To the contrary, "even with respect to matters that arguably fall within the scope of the 'public rights' doctrine, the presumption is in favor of Art. III courts." *Stern*, 564 U.S. at 499 (quoting *Northern Pipeline*, 458 U.S. at 69 n. 23).

---

[30] *See* SDIL-LR, Appx. B, br1001.1.
[31] In the 1978 Act, Congress "[e]liminat[ed] the distinction between 'summary' and 'plenary' jurisdiction" and enabled bankruptcy courts to decide "all 'civil proceedings arising under title 11 [the Bankruptcy title] or arising in or related to cases under title 11.'" *Id.* at 54 (emphasis deleted). Congress thus vested bankruptcy judges with most of the "'powers of a court of equity, law, and admiralty,'" *id*., at 55, without affording them "the protections constitutionally afforded to Art. III judges," such as "serv[ice] for life subject to their continued "good Behaviour," *id.* at 60-61. Unlike Article III judges, bankruptcy judges are subject to removal by the judicial councils of the circuits in which they serve, and their salaries may be diminished by Congress. *Id.* According to the Court, "[a] Judiciary free from control by the Executive and Legislature *is essential* if there is a right to have claims decided by judges who are free from potential domination by other branches of government." *Id.* at 58 (emphasis added). Thus, parts of the 1978 Act were held to be unconstitutional. *Id.* at 81.

Indeed, in the bankruptcy context, the Supreme Court has repeatedly rebuffed attempts to apply the "public rights" doctrine in a manner that erodes constitutional rights. For example, in *Stern*, the Court noted:

> What is plain here is that this case involves the most prototypical exercise of judicial power: the entry of a final, binding judgment by a *court* with broad substantive jurisdiction, on a common law cause of action, when the action neither depends upon any agency regulatory regime. If such an exercise of judicial power may nonetheless be taken from the Article III judiciary simply by deeming it part of some amorphous 'public right', then Article III would be transformed from the guardian of individual liberty and separation of powers we have long recognized into mere wishful thinking.

*Id.* at 494-95 (emphasis in original). As *Stern* makes clear, "Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case . . . ." *Id.* at 499. Thus, the bankruptcy court lacked authority to adjudicate the debtor's tortious interference counterclaim, which she had asserted in response to her stepson's defamation claim against her. *See id.* at 503.

Similarly, in *Granfinanciera*, *supra*, the Supreme Court held that a creditor who had not filed a claim against the bankruptcy estate had a Seventh Amendment right to a jury trial in a fraudulent transfer claim brought under § 548 by the Chapter 11 Trustee. *Id.* at 64. In so holding, the Court rejected the argument that the claim fell within the 'public rights' exception. According to the Court, such claims were not closely intertwined with a federal regulatory program and were more properly characterized as a private right. *Id.* at 55.

The limitations that the Supreme Court has placed upon the "public rights" doctrine in the bankruptcy context has caused certain courts to ponder whether the doctrine has *any* proper application in the bankruptcy context. As one bankruptcy court put it:

> Indeed, it is the Court's refusal in both *Stern* and *Northern Pipeline* to allow a bankruptcy court to do everything that Congress might like that stands as a clear indication that the Court will never declare bankruptcy a 'public right' that simply overrides Article III and the due process it affords. And if not all of bankruptcy is a 'public right,' it is difficult to understand how some portions of it might be while others are not.

*In re Sutton*, 470 B.R. 462, 472 (Bankr. W.D. Mich. 2012). Simply put, it is questionable whether the public rights doctrine has *any* application in bankruptcy. In any case, if a party that does not submit a claim against the bankruptcy estate has a Seventh Amendment right to a jury trial in case

13

brought against it under § 548, *a fortiori,* a party that does not submit a claim against the bankruptcy estate (here, Defendants) similarly has a Seventh Amendment right to a jury in a case brought against it under § 526.

Consistent with the authorities addressed above, Defendants are unaware of any controlling authority that ever has denied any § 526 defendant a jury trial right on the basis of the "public rights" doctrine. There scant number of bankruptcy court decisions in which Courts have struck jury demands but these decisions were made in error. For example in *Davis v. SHLC Holdings, LLC,* (*In Re Gillespie*), 14-ap-1098, (N.D. Cal. June 3, 2015) the Court struck a jury demand and held "There is also no right to a jury for determination of a civil fine. *Tull v. United States*, 481 U.S. 412, 427, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987). But *Tull* holds the exact opposite*. The Court in In re Bascus*, 548 B.R. 742 (Bankr. S.D. Tex. 2016) badly misunderstands the "public rights" doctrine and was incorrectly decided. *Bascus* cavalierly dismisses the importance of the Seventh Amendment jury right and its reasoning contains a fundamental error: It incorrectly states that "Congress, through 28 U.S.C. §157[,] has *assigned* the adjudication of [claims under §110, and §§526-28] to bankruptcy courts." *Bascus*, 548 B.R. at 748 (citing 28 U.S.C. §157(a)) (emphasis added).

As explained *supra* at 11-12, 28 U.S.C. §157(a) *does **not** assign any cases* arising under title 11 to the bankruptcy court. *Rather*, it *authorizes* district courts to *refer* cases to bankruptcy courts. But district courts continue to possess original jurisdiction over cases that arise under title 11, *see* 28 U.S.C. § 1334, and they continue to have oversight responsibility over them. Again, if 28 U.S.C. § 157 truly constituted an "assignment" of cases arising under title 11, it would suffer from the same defects that had caused the Supreme Court to render certain portions of the 1978 Bankruptcy Reform Act unconstitutional in *Northern Pipeline.* For these reasons, among others, *Bascus* was incorrectly decided and does not justify denying Defendants their constitutional right to a jury trial.

**5. The Bankruptcy Court's inability to conduct a jury trial requires that the reference be withdrawn.**

Because Defendants have a Seventh Amendment right to a jury trial, and because they do **_not_** consent to a jury trial in the Bankruptcy Court, the reference must be withdrawn. *See Matter of Grabill Corp.*, 967 F.2d at 1158; *Davidson v. Bristol-Myers Squibb Co.,* No. 10-CV-970-MJR, 2011 WL 13234404, at *2 (S.D. Ill. Sept. 30, 2011) (referral to bankruptcy court withdrawn where defendants had right to jury trial and "made clear that they [did] not consent to trial before the bankruptcy court"); *Advanced Telecomm. Network, Inc. v. Flaster/Greenberg, P.C.* (*In re Advanced Telecomm. Network, Inc.*), No. 6:13-CV-700-ORL-28, 2014 WL 2528844, at *2 (M.D. Fla. June 4, 2014) ("A right to a jury trial can constitute cause for withdrawal of the reference where the parties do not expressly consent to having the bankruptcy court conduct the jury trial."); 28 U.S.C. § 157(e).

### B. Withdrawal of the reference is also mandatory because resolution of this proceeding requires consideration of constitutional issues.

District courts are required to withdraw the reference upon timely motion "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). Courts have held that certain constitutional law issues mandate withdrawal of the reference. *See, e.g., Picard*, 469 B.R. at 414 (consideration of constitutional issues mandated withdrawal of reference). In addition to the Seventh Amendment issue addressed above, this case requires consideration of at least two additional constitutional issues – Defendants' due process rights under the Fifth Amendment and their free speech rights under the First Amendment.

### 1. Because the Bankruptcy Court cannot serve as a neutral arbiter, due process requires withdrawal of the reference.

It is axiomatic that "[a] fair trial in a fair tribunal is a basic requirement of due process." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009). "The Due Process Clause guarantees litigants an impartial judge." *Montgomery v. Uchtman*, 426 F.3d 905, 910 (7th Cir. 2005) (citing *In re Murchison*, 349 U.S. 133, 136 (1955)); *see also Zolotukhin v. Gonzales*, 417 F.3d 1073, 1075 (9th Cir. 2005) ("A neutral judge is one of the most basic due process protections."); *In re L.T. Ruth Coal Co., Inc.*, 66 B.R. 753, 782 (Bankr. E.D. Ky. 1986) ("bankruptcy court is a passive,

impartial arbiter rather than an active participant in [] controversies that may involve vindication of rights that arise under federal law"). Neutral arbiters should not take on the role of advocates. *Bi Qing Zheng v. Lynch*, 819 F.3d 287, 297 (6th Cir. 2016); *see also United States v. Bradley*, 455 F.3d 453, 460 (4th Cir. 2006) (judge in plea negotiations should not be "an advocate for the agreement" rather "than a neutral arbiter" in order to avoid unfairness and partiality in the judicial process). The decisions of non-Article III judicial officers can be reversed on due process grounds if the proceeding was "so fundamentally unfair that the [party] was prevented from reasonably presenting his case . . . ." *Colmenar v. I.N.S.*, 210 F.3d 967, 971 (9th Cir. 2000) (deportation context).

The background that preceded the filing of the Complaint demonstrates that the Bankruptcy Court cannot serve (indeed, it *has not served*) in a role as neutral arbiter:

- <u>No separation of powers</u>: The Bankruptcy Court has directed the Executive Branch (the UST) to investigate UpRight Law in dozens of Chapter 7 bankruptcy cases it filed on behalf of its clients that resulted in discharges of its clients, including the Burns Bankruptcy. Given the Bankruptcy Court's role in initiating and perpetuating these investigations, it cannot impartially preside over an adversary proceeding resulting from the investigations.

- <u>The Bankruptcy Court already has violated Defendants' procedural rights</u>: The Bankruptcy Court has authorized Rule 2004 examinations of UpRight Law, its partners, and the debtors in violation of the express limitations of that rule. *See In re Martelli*, No. BR 16-20316-PRW, 2017 WL 3098105, *3 (Bankr. W.D.N.Y. July 20, 2017) (forbidding examinations under Rule 2004 where true intent was "to develop evidence of misconduct by UpRight Law and [its local partner]."); *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) ("Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs."); *In re French*, 145 B.R. 991, 993 (Bankr. D.S.D. 1992) ("there is something repugnant in requiring an attorney to submit to a Rule 2004 examination, especially when debtor's counsel is the sought-after target."). Rule 2004 may not be used where, as here, the estate is fully administered. *See, e.g., In re Underwood*, 457 B.R. 635, 646 (Bankr. S.D. Ohio 2011) ("[A] 2004 exam is simply not an appropriate tool for obtaining a broad range of information from a non-debtor that is not relevant to the debtor or her estate."); *In re Hilsen*, No. 87-11261, 2008 WL 2945996, at *5 (Bankr. S.D.N.Y. July 25, 2008) ("Discovery of any matter that may affect administration of a debtor's estate only makes sense while estate administration still is in progress. … [Rule 2004] is procedurally inapplicable when there is nothing to discover about current estate administration and when no activity in a case is required other than to close it.").

- <u>The Bankruptcy Court has attempted to usurp the Chapter 7 Trustee's administrative functions</u>: The Chapter 7 Trustee issued his Final Report without any objection in the Burns Bankruptcy (and dozens of other cases). The Bankruptcy Court is not permitted to substitute its judgment on the question of whether the bankruptcy estate has been fully

administered.[32] Its attempt to do so is a transparent effort to justify the ongoing investigations and expand its authority in this adversary proceeding.[33]

- The Bankruptcy Court already has prejudged the merits: The Bankruptcy Court has purported to make "Findings of Facts" relating to the Burns Bankruptcy (and dozens of other cases) in the absence of any contested matter or evidentiary hearing.[34] This is inconsistent with the role of a neutral arbiter.

- The Bankruptcy Court has made inconsistent statements about its motivations for ordering the investigations: In the Opinion, the Bankruptcy Court purported to justify its investigations based on its review of UpRight Law's attorney fees. That suggestion, however, is contradicted by numerous representations by the court in pre-Opinion proceedings.[35]

- The Bankruptcy Court already has disregarded any notions of proportionality: The Bankruptcy Court has authorized *more than 100* Rule 2004 Examinations of UpRight Law, its partners, and its clients. The costs associated with these examinations already has vastly outstripped the fees that UpRight Law earned in the underlying cases. This history suggests that the Bankruptcy Court will not ensure proportionality in discovery in this proceeding.

For these reasons (among others), Defendants respectfully submit that the Bankruptcy Court cannot meet its obligation to serve as a neutral arbiter. Parties are entitled to an unbiased arbiter who has not prejudged their claims under Due Process Clause of the Constitution. *Ahmed v. Gonzales*, 398 F.3d 722, 725 (6th Cir. 2005) Thus, withdrawal of the reference is appropriate because "determination by an Article III judge is required to insure [***both***] the appearance and the reality of independence and impartiality in the decision." *In re Texaco Inc.*, 84 B.R. at 925.

### 2. This case requires consideration of other constitutional issues, such as the First Amendment protection of commercial speech.

In their Answer, Defendants have raised several additional and affirmative constitutional defenses (including First Amendment and Equal Protection defenses).[36] For instance, the UST purports to seeks to enjoin Defendants from engaging in certain commercial speech in

---

[32] *See In re Koza*, 375 B.R. 711, 717 (1st Cir. B.A.P. 2007) (the "responsibility to review the accuracy and correctness of a trustee's final report lies with the U.S. Trustee, see 28 U.S.C. § 586, *and the bankruptcy court intervenes only when an objection is filed).*

[33] Administrative functions and judicial functions were bifurcated in the 1978 Act, leaving bankruptcy courts only to perform judicial functions. *See In re Schollett*, 980 F.2d 639, 641 (10th Cir. 1992). The prior combination of these responsibilities had undermined public confidence in bankruptcy courts. *Id*. The Bankruptcy Court's attempt to usurp administrative functions from the Chapter 7 Trustee is inconsistent with the Act.

[34] *See* Opinion, Ex. B, at 6-35; *see also supra* at 12-13.

[35] *See* Opinion, Ex. B, at 41; *see also supra* at 5-6.

[36] *See* Answer, Doc. 12, ¶¶ 176-200, 201-220.

advertisements.  Defendants have filed an affirmative defense based upon the First Amendment.[37]
Constitutional issues of this nature must be addressed by the District Court.

### C.  Additional factors also support withdrawal of the reference.

Because the UST's adversary proceeding is non-core, withdrawal of the reference is
especially appropriate.  *See, e.g., In re Orion Pictures Corp.*, 4 F.3d at 1101.  Core jurisdiction "is
limited to questions that arise during the bankruptcy proceeding and *concern the administration of
the estate*, such as whether to discharge a debtor." *Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159,
162 (7th Cir.1994) (emphasis added). There is no core jurisdiction in a dispute between two
nonparties to the bankruptcy. *In re Ha-Lo Indus., Inc*., 330 B.R. 663, 668 (Bankr. N.D. Ill. 2005)
(citing *Zerand*, 23 F.3d at 162) (finding that 28 U.S.C. § 1334(b) could not possibly be applicable
to a dispute between two nonparties to the bankruptcy proceeding)).  Claims under § 526 are not
enumerated in 28 U.S.C. § 157, nor are claims for civil penalties and injunctive relief.  This makes
sense because these claims and forms of relief, when sought by the UST, do not relate to the rights
of debtors or creditors involved in the bankruptcy.

The UST nevertheless alleges that her action against Defendants is a "a constitutionally
and statutorily core proceeding" under 28 U.S.C. §157(b)(2)(A) and (O) because "it asserts only
claims arising directly under title 11 of the United States Code."[38] But the UST is incorrect.

The common denominator in Subsection 157(b)(2)(A) and (O) is that each provides
predicates that must relate to the administration of the bankruptcy estate.  *See* § 157(b)(2)(A)
("matters concerning the administration of the estate"); § 157(b)(2)(O) ("other proceedings
affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the
equity security holder relationship, except personal injury tort or wrongful death claims.").  This
case does *not* relate to the administration of the Debtor's bankruptcy estate.  For starters, the
Chapter 7 Trustee already issued his Final Report without objection (timely or otherwise).  *The*

---

[37] *Id.* at 41-42, ¶¶ 245-250.
[38] *See* Complaint, Doc. 1, at ¶ 3. Notably, the UST tacitly concedes, as she must, that this adversary
proceeding is not a bankruptcy case; does not arise in a bankruptcy case; and does not relate to a
bankruptcy case.

*party with responsibility for administering the estate, the Chapter 7 Trustee, already has determined that the estate has been fully administered.* Moreover, even if the case had not been fully administered, claims for civil penalties and injunctions targeted at a nonparty law firm cannot affect the bankruptcy estate. The suggestion that this case relates to the administration of the bankruptcy estate is pure fiction.

In addition to the non-core nature of this case, other factors, such as judicial economy and preservation of resources support withdrawal of the reference. Given that these claims are non-core, the Bankruptcy Court cannot enter final judgment, and a review of any recommendation that the Bankruptcy Court might make would have to be conducted *de novo*. *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 135 S. Ct. 1932, 1940 (2015). There is no reason to require such duplication of effort. Additionally, given that the Bankruptcy Court has permitted the UST to engage in *scorched earth* discovery tactics, Defendants have every reason to be concerned that the Bankruptcy Court will continue to allow inefficient, and grossly excessive, discovery that is massively disproportional to the needs of this case (and others).

## V. Conclusion.

For the foregoing reasons, Defendants respectfully ask that this Court grant an order withdrawing the reference in this adversary proceeding that is effective immediately. Alternatively, if the Court denies this motion, Defendants ask the Court to certify the Seventh Amendment right to a jury trial issue and the Fifth Amendment due process issue for interlocutory appeal to the United States Court of Appeals for the Seventh Circuit.

Date: April 12, 2021

Respectfully submitted,

/s/ *Mark T. Lavery*
Mark T. Lavery
Attorney at Law
15774 S. LaGrange
Orland Park, IL 60462
(t) (708) 274-6803
(e) laverylawyer@gmail.com

*Counsel for Defendants, Deighan*

*Law LLC, and James E. Ford*

Charles A. Armgardt
Of Counsel
DEIGHAN LAW LLC
79 W. Monroe St., Suite 1006
Chicago, IL 60603
(t) 877-927-5451
(e) carmgardt@uprightlaw.com

*Counsel for Defendants, Deighan
Law LLC and James E. Ford*