UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In re<br><br>BOYCE ALLEN BURNS and<br>AMANDA LANE BURNS,<br><br>Debtors. | Case No. 21-cv-417-JPG<br>Ch. 7 Bankruptcy Case No. 19-60349 |
| NANCY GARGULA, United States Trustee,<br><br>Plaintiff,<br><br>v.<br><br>DEIGHAN LAW LLC f/k/a Law Solutions Chicago LLC, d/b/a Upright Law LLC, and JAMES E. FORD,<br><br>Defendants. | Adversary No. 20-0618 |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of defendants Deighan Law LLC d/b/a Upright Law LLC ("Upright") and James E. Ford ("Ford") to withdraw this Court's reference of this adversarial proceeding to the United States Bankruptcy Court for the Southern District of Illinois pursuant to 11 U.S.C. § 157(d) (Doc. 2). The plaintiff United States Trustee ("UST") has responded to the motion (Doc. 2-1), and the defendants have replied to that response (Doc. 3).

**I.    Background**

This adversarial proceeding began on December 31, 2020, when the UST filed a complaint against the defendants based on Upright's method of doing business. The UST alleges that Upright is simply a legal referral agency that refers potential bankruptcy filers to local attorneys, like defendant James Ford, in the debtor's area.[1] Upright promises prompt legal

---

[1] The UST's Complaint alleges that Ford signed a partnership agreement with Upright where Ford receives up to 33% of fees paid to Upright (Doc. 1, Adv. No. 20-0618). Thus, Upright retains approximately 67% of the fees in

services, including a free initial consultation, but the UST claims that, in reality, it does not begin legal work immediately but only after the potential bankruptcy filer has paid the full fee Upright charges. The UST asserts that only then is any legal work begun, and even then that the work is subpar and overpriced. The UST claims that delays caused by not beginning legal work promptly cause harm to the bankruptcy filers.

With respect to debtors Boyce Burns and Amanda Burns ("Debtors") in particular (aged 69 and 64 years-old, respectively), the UST alleges that they contacted Upright on June 14, 2018, where they spoke to a non-attorney, but the case was not handed off to Ford until July 25, 2018, after the Debtors had paid all fees Upright charged. In fact, during this initial call in June 2018, this non-attorney convinced debtors to file a petition of bankruptcy under Chapter 7 and not Chapter 13. This non-attorney failed to put any information concerning trust income from Amanda Burns. On July 25, 2018, the Debtors received a phone call from Ford. After this call, Ford "approved the case" but did not make any notations regarding Amanda Burns' trust interests. On November 29, 2018, an Upright employee contacted the Debtors via email stating that Upright needed to gather the Debtors' social security numbers, despite having the file open for more than five months and the Debtors making their last attorney fee payments. From June 2018 to November 2018, the Debtors paid the quoted $1,675 in attorney's fees, court filing fee of $355, and pre-filing credit counseling and post-filing management course.

Ford did not speak with the Debtors until the Debtors called Ford on January 14, 2019, to tell him they were served by First Financial Bank in Circuit Court of Clark County, Illinois regarding money due. This lawsuit required Burns to appear in court on February 13, 2019. Ford told the Debtors to complete a questionnaire, which they completed four days later. The

each Chapter 7 case for providing an initial "consultation" with a non-attorney or attorney salesperson.

questionnaire revealed the Debtors had an interest in a trust. On February 13, 2019, a judgment of $10,547.79 was entered against the Debtors in Clark County Court. Following entry of judgment, First Financial Bank filed a Citation to Discovery Assets, which required the Burns to appear on April 24, 2019. The Debtors appeared in Clark County Court, even in light of fears that their bankruptcy case had not been filed yet. The Debtors requested the judge in Clark County Court to continue the citation to allow for their bankruptcy filing, which was denied. The order as a result of the citation required the Debtors to make monthly payments of $100 on the fourth Thursday of every month, $800 from Amanda Debtors' trust disbursement, and half of disbursement thereafter, and pay all of annual income tax refunds commencing with their 2019 refund.

The Debtors spoke to Ford on April 19, 2019, where the Debtors agreed to change protection from a Chapter 7 to a Chapter 13. Ford made the recommendation under the belief that Amanda Burns' trust interest was not exempt and would be subject to turnover in a Chapter 7. Upright prepared and sent the Debtors three different agreements for legal services from June 2018 to September 2019. The Debtors had their first and pre-filing face-to-face meeting with Ford on September 21, 2019, which was the date of the Debtors' bankruptcy filing. From June 14, 2018, to September 21, 2019, the UST alleges Upright failed to provide immediate legal help and failed to act with appropriate diligence.

The UST claims the defendants have violated Bankruptcy law in three ways. It points to three provisions of the Bankruptcy Code and one Bankruptcy Rule:

- 11 U.S.C. § 526(a)(1), which prohibits debt relief agencies from "fail[ing] to perform any service that such agency informed an assisted person or prospective assisted person it would provide in connection with a case or proceeding under this title";
- 11 U.S.C. § 526(a)(3), which prohibits debt relief agencies from "misrepresent[ing] to any assisted person or prospective assisted person, directly or indirectly, affirmatively or by material omission, with respect to—(A) the services that such agency will provide to

- such person; or (B) the benefits and risks that may result if such person becomes a debtor in a case under this title";
- 11 U.S.C. § 329(b), which allows the court to cancel an agreement for a debtor to pay an attorney an amount exceeding the reasonable value of the services performed or order the return of the excess payment to the estate or the person who made the payment; and
- Federal Rule of Bankruptcy Procedure 2017, which permits a court, after notice and a hearing, to determine whether a debtor's payment to an attorney in contemplation of the filing of a Bankruptcy petition was excessive.

The UST seeks an injunction, a civil penalty, and disgorgement of amounts Debtors paid the defendants.

The UST's allegations stemmed from the Bankruptcy Judge's concern with Ford's "Disclosure of Attorney Compensation," one of the forms he was required to file in his Bankruptcy case. The form was completed and signed by Ford, as an attorney with Upright, and showed attorney's fees paid in the amount of $1,675.00. Following a hearing, the Bankruptcy Court ordered Ford to submit to the UST an itemization of attorney's fees, which led the UST to conduct Rule 2004 examinations of debtors and Ford and to request documents from two of Burns' creditors. That further investigation led to the UST's current adversarial complaint.

This matter was originally referred to the Bankruptcy Court pursuant to 28 U.S.C. § 157(1) and Local Rule Br1001.1, but now the defendants ask the Court to withdraw that reference pursuant to 28 U.S.C. § 157(d).  They argue that withdrawal is mandatory because (1) resolution of this matter requires consideration of constitutional issues as well as the Bankruptcy Code and (2) the defendants are entitled to a jury trial and have not consented to resolution by the Bankruptcy Court.  They also argue the Court should exercise its discretion to withdraw the reference in light of the fact that this is a non-core proceeding and there is a need for uniformity and efficient resolution of the dozens of Bankruptcy cases in which the UST has sought relief against Upright and its network of local attorneys for similar reasons.

**II.     Analysis**

Generally, District Courts have original jurisdiction over all proceedings arising out the Bankruptcy Code, Title 11 of the United States Code.  28 U.S.C. § 1334.  However, a District Court may refer such matters to the Bankruptcy Court for the district.  28 U.S.C. § 157(a).  In the Southern District of Illinois, "[a]ll cases under Title 11 of the United States Code, and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11, are referred to the Bankruptcy Judge." Local Rule Br1001.1.  The rule further provides that this referral shall be given the broadest possible interpretation to allow the Bankruptcy Court the maximum authority to administer cases within its jurisdiction.  *Id.*

Nevertheless, on occasion, a party may ask the District Court to withdraw that reference, which the District Court *may* do "for cause shown," and *must* do "if the court determines that resolution of the proceeding requires consideration of both title 11 [the Bankruptcy Code] and other laws of the United States regulating organizations or activities affecting interstate commerce."  28 U.S.C. § 157(d).  The term "cause" is not defined, but courts often look to such factors including, but not limited to, whether the proceeding is core or non-core, the efficient use of judicial resources, any delay or costs to the parties, the uniformity of bankruptcy administration, the prevention of forum shopping, and other factors.  *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir.1993); *Homa v. Gargula*, No. 19-cv-1139-NJR, 2019 WL 6701684, at *1 (S.D. Ill. Dec. 9, 2019).  The provision allowing withdrawal of a reference should be narrowly construed so it does not just provide an "escape hatch" out of Bankruptcy Court.  *In re CIS Corp.*, 188 B.R. 873, 877, 1995 WL 653366 (S.D.N.Y. 1995).  And the parties seeking withdrawal of the reference—here, Upright and Ford—bear the burden of showing a withdrawal of the reference is justified.  *See In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 955 (7th Cir. 1996).

The Court addresses each of the defendants' arguments in turn.

    A.    <u>Right to a Jury Trial</u>

The defendants argue that withdrawal is mandatory because they are entitled to a jury trial under the Seventh Amendment on the UST's claims against them for civil penalties for a clear and consistent pattern or practice of violating 11 U.S.C. § 526(a)(1) and (3). *See* 11 U.S.C. § 526(c)(5)(B). Generally, Bankruptcy Courts are not authorized to conduct jury trials by right under the Seventh Amendment absent special designation by the District Court and the consent of the parties. *Matter of Grabill Corp.*, 967 F.2d 1152, 1156 (7th Cir. 1992); 28 U.S.C. § 157(e).

The Seventh Amendment guarantees the right to a jury trial for "suits at common law, where the value in controversy shall exceed twenty dollars." U.S. Const. amend. VII. Whether the Seventh Amendment guarantees the right to a trial by jury depends on whether the specific claims are legal, rather than equitable, regardless of the nature of the suit as a whole. *Ross v. Bernhard*, 396 U.S. 531, 538 (1970) (finding plaintiffs in stockholder derivative action alleging breach of fiduciary duty could not be deprived of jury trial right for simultaneous breach of contract and gross negligence claims); *see Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989) (noting "Suits at common law" commonly interpreted to mean suits that ascertained legal, as opposed to equitable, rights).

    To decide whether a claim is legal or equitable, the Court considers the following:

> First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature. The second stage of this analysis is more important than the first. If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder.

*Id.* at 42 (internal citations and quotations omitted). However, the Seventh Amendment does not

guarantee the right to a jury trial for all legal claims.  Legal claims asserting public rights, as opposed to purely private ones, do not require a jury trial if Congress has assigned the adjudication of such claims to an administrative agency or a specialized court of equity sitting without a jury.  *Id.* at 42 n.4, 51.

The defendants argue that actions for civil penalties are analogous to actions in debt, historically legal claims.  Further, they most closely resemble causes of action for dishonesty, fraud, misrepresentation, or professional negligence, all of which traditionally called for jury trials.  Additionally, they argue that, in enacting 11 U.S.C. § 526(a)(1) and (3), Congress has not created a public right unconditionally assigned to an administrative agency or specialized court of equity, instead allowing a court discretion to assign such matters to the Bankruptcy Court for resolution.

The UST counters that its adversarial complaint seeks injunctive relief and sanctions, both of which are equitable remedies for which the Seventh Amendment does not provide the right to a jury trial.  To the extent it also seeks civil penalties, the UST contends that there is no right to a jury trial because the claim is for violation of a public, not a private, right.  That public right, it contends, is Congress's enactment of 11 U.S.C. § 526 to protect consumers from and prevent abuse of the bankruptcy system by unscrupulous debt relief agencies.  It argues Congress also authorized the Bankruptcy Court, a specialized court of equity, to adjudicate such claims.  *See* 28 U.S.C. § 157(b)(1) & (2).

The parties do not really dispute that, to the extent the UST's claims seek equitable relief such as a declaration or an injunction, there is no right to a jury trial.  The real question is whether the defendants have a right to a jury trial on the UST's claims for civil penalties under 11 U.S.C. § 526(c)(5)(B), which are intertwined with its equitable claims.  The defendants argue

that such claims are akin to actions at law for fraud, dishonesty, misrepresentation, or professional negligence, and that the remedy the UST seeks—a sum of money—is a legal remedy. *See Granfinanciera*, 492 U.S. at 47-49; *Tull v. United States*, 481 U.S. 412, 418 (1987) (suits for civil penalties are legal actions requiring jury trial). The UST does not seriously dispute this, instead relying on the public nature of the rights it seeks to enforce. As noted above, the Seventh Circuit Court of Appeals does not guarantee the right to a jury trial for legal actions based on statutory public rights committed to an equitable tribunal. *Id.* at 42 n.4.

The public rights exception to the right to a jury trial of a legal action applies where Congress devises "novel causes of action involving *public* rights free from the strictures of the Seventh Amendment" and "assigns their adjudication to tribunals without statutory authority to employ juries as factfinders." *Id.* at 51 & n.9 (emphasis added) (citing *Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 455 (1977)). "The public rights doctrine is linked to Congress' Article I power, and has particular force in the bankruptcy context. Bankruptcy has traditionally been a distinctly public concern evidenced most significantly by its inclusion in the Article I of the Constitution." *In re Bascus*, 548 B.R. 742, 747-48 (Bankr. S.D. Tex. 2016) (internal citations omitted) (citing *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363 (2006)).

Congress created a novel cause of action in 11 U.S.C. § 526 of the Bankruptcy Code to achieve the Government's legitimate interest in preventing a specific public harm—abusive practices by debt relief agencies, *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 236 n. 3 (2010), and "to strengthen professionalism standards for attorneys and others who assist consumer debtors with their bankruptcy cases," 4 Collier on Bankruptcy ¶ 526.LH[1] (16th 2021) (internal quotations omitted). *Milavetz,* 559 U.S. at 253; *Zauderer v. Office of*

*Disciplinary Couns. of S. Ct. of Ohio,* 471 U.S. 626, 651 (1985).  The rights served to preserve the integrity of the federal bankruptcy regulatory scheme as a whole and the discipline of those who practice in bankruptcy, not any particular debtor's or creditor's private rights.  Congress then assigned adjudication of such claims to Bankruptcy Courts by allowing, although not requiring, district courts to refer them to bankruptcy judges.  28 U.S.C. § 157(a).  The Court finds the permissive nature of this assignment immaterial to the question of whether they have been assigned to the Bankruptcy Courts.  Thus, the UST's causes of action under 11 U.S.C. § 526 fall within the public rights exception noted by *Granfinanciera* and do not require a jury trial under the Seventh Amendment or withdrawal of the reference to the Bankruptcy Court.  *See, generally, In re Bascus*, 548 B.R. at 745-48.

      B.      <u>Consideration of Constitutional Issues</u>

Next, defendants argue that withdrawal of the reference is mandatory because resolution of this proceeding requires consideration of constitutional issues, namely the Seventh Amendment issue, defendants' due process rights under the Fifth Amendment, and free speech rights under the First Amendment.  Specifically, defendants argue that reference is required "if the court determines that resolution of the proceeding requires consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  28 U.S.C. § 157(d).  The Second Circuit Court of Appeals has ruled that mandatory "[w]ithdrawal under 28 U.S.C. § 157(d) is not available merely whenever non-Bankruptcy Code federal statutes will be considered in the bankruptcy court proceeding, but is reserved for cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding."  *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990) (holding withdrawing reference warranted so District Court could address how

securities laws affected "good faith" under fraudulent transfer statute, effect of Bankruptcy Code's safe harbor provision, whether trustee could avoid transfers that satisfied antecedent debts, issue of Bankruptcy Court's constitutional authority to adjudicate fraudulent transfer claims, whether trustee could not bring avoidance actions, and whether trustees had standing to raise fraudulent transfer).

Defendants' contention that the reference must be withdrawn where resolution of a proceeding requires consideration of Title 11 and interstate commerce is incorrect. First, the case that defendants cite does not support that contention, but instead speaks to whether a District Court must decide unresolved issues regarding a federal statute. *Picard v. Avellino*, 469 B.R. 408, 414 (S.D.N.Y. 2012). Additionally, as the UST notes, other courts have rejected this argument. "At some level, litigation impacts organizations and activities affecting interstate commerce, but impacting is not synonymous with regulating. Under § 157(d), mandatory withdrawal requires, at minimum, the presence of a non-Bankruptcy Code federal law that has more than a *de minimis* effect on interstate commerce." *Mikulin v. L. Sols. Chicago, LLC*, No. 1:19-MC-01590-MHH, 2020 WL 514474, at *2 (N.D. Ala. Jan. 31, 2020) (stating federal law has more than *de minimis* effect on interstate commerce if "those rights and duties are essential to resolution of the case on the merits"). Defendants do not make an adequate showing that a resolution of this matter has more than a *de minimis* effect on interstate commerce.

Defendants argue due process requires a withdrawal of the reference because the Bankruptcy Court cannot serve as a neutral arbiter, which would violate defendants' due process rights. In support, defendants provide six reasons as to why the Bankruptcy Court cannot and has not served as a neutral arbiter: (1) the Bankruptcy Court has directed the Executive Branch, through the UST, to investigate Upright in dozens of bankruptcy cases and thus, cannot

impartially preside over an adversarial proceeding resulting from said investigations; (2) the Bankruptcy Court has already violated defendants' rights by wrongfully authorizing Rule 2004 examinations of Upright and its partners; (3) the Bankruptcy Court has attempted to usurp the Chapter 7 trustee's administrative function; (4) the Bankruptcy Court has prejudiced the merits, as illustrated in its "Findings of Facts" in absence of a contested matter or evidentiary hearing; (5) the Bankruptcy Court has made inconsistent statements about its motivations in ordering the investigations; and (6) the Bankruptcy Court disregarded notions of proportionality *i.e.* disregarded the fact the costs associated with these Rule 2004 Examinations outstrip the fees Upright earned in the underlying cases. The Court will take each of these arguments in turn.

The UST claims defendants' first argument that the Bankruptcy Court cannot impartially preside over these proceedings is without basis and a "patently absurd contention" because it is akin to stating, "a court cannot adjudicate its own orders to show cause." The Court agrees. Congress has granted the UST authority to challenge fee applications. *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 842 (3d Cir. 1994) ("Congress' grant of authority to the UST to challenge fee petitions merely bestows the UST with standing and/or encourages the UST to do so; it in no way signifies by negative implication that the bankruptcy court is without the power and duty to review fee applications independently when the UST does not object.").

Next, the UST states defendants' arguments regarding the 2004 examinations are without merit because the Bankruptcy Court has broad discretion to approve these Rule 2004 examinations.[2] *In re DeShetler*, 453 B.R. 295, 298 (Bankr. S.D. Ohio 2011) (the limitations on such Rule 2004 examinations are that they should "not be so broad as to be more disruptive and

---

[2] Bankruptcy Rule 2004 allows an "examination of an entity under this rule or of the debtor under §343 of the Code" and "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge."

costly to the party sought to be examined than beneficial to the party seeking discovery" and "cannot be used for purposes of abuse or harassment."). The UST states that the Bankruptcy Court already held good cause exists to conduct these examinations because it assisted the Bankruptcy Court in determining the reasonableness of the fees charged to the debtors, which falls within Rule 2004. The Court agrees, especially because defendants do not provide a reason to disrupt the Bankruptcy Court's findings related to the "good cause" justifications of the examinations.

Third, the UST states the Bankruptcy Court did not usurp the UST's role and, in fact, the Bankruptcy Court is charged with reviewing each request on a case-by-case basis in determining whether a case has been fully administered. *In re Shotkoski*, 420 B.R. 479, 482 (B.A.P. 8th Cir. 2009). Thus, the UST contends the Bankruptcy Court exercised its discretion in deciding the Burns' bankruptcy case should remain open to investigate and determine reasonableness of fees. *In re Sweports, Ltd.*, 777 F.3d 364, 368 (7th Cir. 2015) ("there's no reason why dismissing the bankruptcy and leaving for later a determination by the bankruptcy judge of how much Sweports owed Wolf should be thought an alternative outside the judge's jurisdiction"). The Court agrees. The Bankruptcy Court was working within its discretion when it denied Upright's motion close the Burns' bankruptcy case.

Next, the UST says defendants provide no legal basis for asserting the Bankruptcy Court "prejudged the merits" by making "Findings of Fact." This Court agrees. These "Findings of Fact" were based on the record and not findings on the merits of the allegations raised by the UST in the complaint. The Court does not find the defendants' arguments here persuasive.

Fifth, the UST states there are no "inconsistent statements" about its motivations for ordering the investigations. The Bankruptcy Court may have more than one concern about the

fees charged by Upright and cited such reasons on separate occasions.  Having more than one concern about the investigation is not a reason the Bankruptcy Court is not neutral.

Lastly, the UST maintains that the Bankruptcy Court has not wrongfully disregarded notions of proportionality, and that the costs associated with the investigations do not unfairly exceed the costs collected by Upright.  Defendants state the Bankruptcy Court has authorized more than 100 Rule 2004 examinations and outstripped the fees Upright as received.  The UST states that this is not "unduly onerous."  In fact, Upright's own objections into each investigation and inquiry is what has exponentially increased the costs it complains of now.  The Court agrees and finds that defendants have simply not met their burden to show the Bankruptcy Court is biased.  *Margoles v. Johns*, 660 F.2d 291, 296 (7th Cir. 1981) ("a litigant is not denied due process by either the 'appearance' of partiality or by circumstances which might lead one to speculate as to a judge's impartiality. A litigant is denied due process if he is in fact treated unfairly.").

In their next effort, defendants argue that the reference must be withdrawn because their First Amendment rights are implicated.  Specifically, defendants assert their First Amendment rights are infringed by the UST's request under 11 U.S.C. § 526(c)(5) to enjoin Upright from violating § 526(a) by making misrepresentations to prospective assisted persons and assisted persons, including the Debtors, regarding services defendants cannot or do not intend to provide. Defendants state enjoining them will chill certain commercial speech advertisements. The Bankruptcy Abuse Prevention and Consumer Protection Act, 11 U.S.C. § 526-28 was promulgated to protect vulnerable debtors from being misled and subsequently harmed in relation to their consumer debts.  The Supreme Court has held that First Amendment protection for commercial speech is justified by the "information's value to customers" and an "attorney's

constitutionally protected interest in not providing the required factual information is minimal." *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 249, 130 S. Ct. 1324, 1339, 176 L. Ed. 2d 79 (2010) (citing *Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*, 471 U.S. 626, 628, 105 S. Ct. 2265, 2270, 85 L. Ed. 2d 652 (1985). Thus, "an advertiser's rights are adequately protected as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers." *Zauderer*, 471 U.S. at 628. The Supreme Court has found the disclosures required by § 528 to combat the problem if misleading advertisements are valid.

    C.    <u>Permissive Withdrawal</u>

Lastly, defendants argue this Court should use its discretion to withdraw the reference. A district judge "may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown" for the removal. 28 U.S.C. § 157(d).

Courts generally consider the following factors in determining whether cause exists: "whether withdrawal would promote judicial economy or uniformity and efficiency in bankruptcy administration; whether it would reduce forum shopping; whether it would cause delay and costs to the parties; whether a particular court has familiarity with the case; whether the parties have demanded a jury trial; and whether a core or non-core proceeding is involved." *Homa v. Gargula*, No. 19-CV-1139-NJR, 2019 WL 6701684, at *1 (S.D. Ill. Dec. 9, 2019) (citations omitted). Additionally, a "core proceeding "invokes a substantive right provided by Title 11 or if it is a proceeding that, by its very nature, could arise only in the context of a bankruptcy case." *Barnett v. Stern*, 909 F.2d 973, 981 (7th Cir. 1990). "[P]ermissive withdrawal is the exception, rather than the rule, as bankruptcy jurisdiction is 'designed to provide a single

forum for dealing with all claims to the bankrupt's assets." *Id*.

The Court does not find this case to fit in the exception. Specifically, this case arises only in the context of the bankruptcy case, and under the Bankruptcy Code. This bankruptcy complaint was brought pursuant to 11 U.S.C. §§ 329, 526, and Bankruptcy Rule 2017. Now UST requests sanctions as provided under § 526. The Seventh Circuit Court of Appeals has held that attorney misconduct related to the administration of an estate are core matters. *In re Memorial Estates, Inc.*, 950 F.2d 1364, 1370 (7th Cir. 1991). Thus, these claims are core matters brought forth under the Bankruptcy Code, and this weighs in favor of keeping this matter in the Bankruptcy Court.

Withdrawal would not promote judicial economy, uniformity, or efficiency. Judge Grandy is familiar with the underlying facts and case. The Court does not see how transferring the case to a District Court would serve judicial economy where the Bankruptcy Court has administered the underlying case since September 2019. *See also Homa v. Gargula*, No. 19-CV-1139-NJR, 2019 WL 6701684, at *3 (S.D. Ill. Dec. 9, 2019) ("Judge Grandy is certainly the most familiar with the underlying case and the issues raised in Homa's motion. She is also in the best position to decide whether a presumptively reasonable fee would be helpful in this case."). Withdrawing the reference from Bankruptcy Court would cause additional delays by adding the matter to the Court's already full docket. *Id*. Keeping this matter in the Bankruptcy Court, the court most familiar with the underlying case, investigations, and Bankruptcy Code, would promote uniformity and efficiency.

### III.     Conclusion

The Court hereby DENIES defendants' Motion to Withdraw the Reference (Doc. 2). The Court further **DIRECTS** the Clerk of Court to send a copy of this Memorandum and Order to

Judge Grandy and **TERMINATE** this case.

**IT IS SO ORDERED.**
**DATED: March 24, 2022**

                                          **/s/ J. Phil Gilbert**
                                          **J. PHIL GILBERT**
                                          **U.S. DISTRICT JUDGE**